May it please the court. Counsel. My name is Tom Dalk, and I represent HIP, Inc., formerly known as Unitherm Food Systems, Inc. This case involves the development of a new, novel cooking process. I have to start with a preliminary matter. Whenever I see that the last entry in a district court was the dismissal of the remaining claims without prejudice, I get nervous that we have another set of lawyers who think they can evade the intent of Congress in 28 U.S.C. 1291. So I read docket entries, what is it, 304 to 306, and that's exactly what it looked like happens here. And we have a long string of cases with various remedial actions we take, so why don't you tell me why this wasn't a manufactured appeal to evade the final order doctrine. Yes, Your Honor, I'll address that issue. After the summary judgment order was issued, the parties did engage in further litigation, and it was concluded that the case should not go forward because the issues that had been decided on summary judgment were so. I understand all the practicalities, but it looks to me like you think if you get a reversal, then we can reopen the issues dismissed without prejudice and proceed along, and we will have had a wonderful interlocutory appeal. And if that was the intent here, we're likely to do something about it. One thing we can do is deem the dismissal to be with prejudice. Yes, Your Honor. We have done that. I understand. And also dismiss the appeal for lack of a final order. We have done that. Why shouldn't we do one of those things here? Because the final judgment that was entered has handled all of the claims in the case. You think you can revive the remaining claim? If you tell me it was dismissed without prejudice because it was basically premature vis-à-vis the patent office, that would be different, and that would not reflect an intent to revive it if you get some sort of relief from this court on the claims that are otherwise here. But if you think you can revive it, or if opposing, I can't remember who was the, I think your client was the. . . It might have been Cross Claims. Wasn't it Cross Claims? It was, Your Honor. If anybody thinks that can be revived, I want to hear it today so we can know what to do with it. The claim that was dismissed without prejudice was a declaratory judgment claim concerning the ownership of the hybrid process, which was the process. . . Counsel, I don't want to hear all that. I want an answer to the question. Does anyone think those can be revived because they were dismissed without prejudice? That's the final order doctrine problem. Yes, Your Honor. That's a yes or no. It is Unitherm's position that those issues have been disposed of. Okay. Well, that's not very definitive. Of course they've been disposed of. We can make that clear if we continue on. You mean disposed of and you're prepared to have them dismissed with prejudice so the claims cannot be revived? Is that what you mean by disposed of? Or are you not sure yet whether that's where you want to go? Your Honor, I can. . . Because if the appeal is dismissed, then you can proceed with those claims first before the whole thing comes up on appeal. We're happy to have you go try those cases and those claims and come back with a true final order if that's what you prefer. Your Honor, I would have to consult with my client before I'd make that commitment, but I do understand the court's concern. And we believe that the issues on appeal are the important issues that need to be decided. That's what people always think. That's because then the final order doctrine is such a pain for people who want to only go ahead with the tail end of the suit if the main part of the suit stays alive. In my 25-plus years, I've seen this time and time again. And as a litigator, I lived with the pain and suffering of the final order doctrine. We'll go ahead with the appeal, but we expect both parties within a week to advise whether, in their view, if we do anything other than affirm or can these claims be revived. And if you say you're content to have them deemed dismissed with prejudice, then I can almost guarantee we'll go ahead and finish the case. If you say something different, your clients may have wasted a lot of money with this appeal. Yes, Your Honor. Go ahead. Let's go back to where you want to be today. This case involves the development of a new novel cooking process in the food industry. It involved the making of precooked bacon with a spiral oven using superheated vapor. The district court granted summary judgment, however, on the agreements at issue, ruling that the project that was involved was limited to the development of a commercial oven and specifically ruled that it did not involve a cooking process. Unitherm submits that this fundamental error, the JDA, the MCDA was attached as Exhibit A to the JDA and it governed the rights of the parties concerning confidential information. It was specifically referenced and incorporated into the JDA with respect to those duties. So both agreements covered a cooking process. Well, you know, you've made this so complex that I've been very confused. Where I want to start is the alleged breach of the JDA and you say that whether the oven was viable is a jury question, right? I think that's your argument number one. So my question to that is where are the facts that make whether a viable oven had been developed, sufficiently developed to prevent termination, where are the facts making that a jury issue? Your Honor, I will address that. The viable results under the JDA involved the end product, the actual pre-cooked bacon that needed to be at a certain quality. Well, suppose that we agree with the district court's interpretation of the plain language of the contract to the contrary. Your Honor... The viability reference was to the oven. Where are the disputed facts as to whether a commercial oven had been developed? In other words, an oven that on the premises, as I understand what we're talking about, the premises of Hormel, would produce a commercially viable product. We had a prototype oven and then that was to be developed into a commercial oven and if it wasn't viable, either party could terminate. And so you say that's a jury question, whether it was viable. And I say where are the facts and you say it's a process that has to be viable. And my question is, if we agree with the district court that the JDA focus was the oven, where are the facts that make the development of a commercially viable oven a jury issue? Your Honor, if we look at the language of the agreement, the paragraph that contains the definition of project specifically refers to an oven process that would be initially focused on producing bacon. And we would submit that the oven at issue here necessarily involves a cooking process. To limit it to just a commercial oven would be error. And we would ask the court to correct that interpretation. If we look at... I hope you understand you didn't answer my question. I asked you for fact references. Deposition, affidavits, documents to read on the question of viability, whether it's you defining it or the district court. Your Honor, if we look at... the appropriation request made by Hormel in mid-2008, Mr. Harid of the Hormel team is making a request for money to enter into a six-month lease of the Unitherm test oven. And he wrote... What page are you reading from in the appendix? Just give me a page number. You don't have a page number. Well, go ahead then. I just thought we could track it. Go ahead. We'll find it. I'm sorry, Your Honor. Usually you're reading from a page that has a page number on the bottom. This testing has established that pre-cooked bacon with good flavor, color, and appearance, similar to the R&D batch oven, can be produced in a continuous oven. Thus, it is important for us to control this technology actively working on the project with Unitherm. And to put that into context, the test oven is an 8-foot by 8-foot by 8-foot oven. It is called a mini spiral oven, but it is definitely a large functioning oven that has been specially adapted with the Unitherm process to make the bacon that's requested by Hormel. That is the test oven we're talking about. And at that stage... That isn't the viable commercial oven. The viable commercial oven gets developed from the prototype. And ultimately, as I understand it, your client sold the prototype to Hormel when Hormel said, you know, we can't make it work. Am I wrong about that sequence? I respectfully submit you are, Your Honor. And because the test oven was a functioning one-lane oven that could cook bacon, the oven that only needed to be developed would have three lanes, and it would be larger. But the oven itself was fully functioning and using the Unitherm process in a high-quality way. We would submit... But isn't your lead point on appeal that project means the process, not the oven? Isn't that your point? Or are you saying even if project means the oven, there's still a problem with summary judgment? Your Honor, our position is that the project includes the oven and the process. Right, that's what I thought. We can't separate it. But if the district court was correct that it only involves the oven, you're not arguing there's a genuine issue of fact under that reading of the contract, are you? We are not saying that if it is truly limited to just an oven and you're buying an oven only and you're not dealing with process at all, we would submit the contracts don't make any sense, if that's the case. But if that is the... You just talked as though this oven is something that the consumer buys or the retailer buys. I thought we were talking about an oven that Hormel would use for a commercially viable product it would market to retailers who would then sell the bacon product to consumers. Do I have this completely upside down? Yes, Your Honor, I believe... The oven was to be sold to other people? No, it wasn't. The oven would be used at Hormel to make precooked bacon. But the ovens would not be resold or anything, yes. It is a oven process that as it's referred to in the JDA that was being purchased from Unitherm. But the district court's ruling was that the project just involved the development of the oven by itself, not the process, correct?  What's wrong with that ruling given the way the agreement was drafted with the parenthetical at the end of the sentence that refers to the oven? Yes, Your Honor, if we look at the JDA and the paragraph that we're talking about, the last sentence reads that Hormel has developed a prototype high-steam level oven that produces such bacon. Hormel has developed? Yes, and would like to work with Unitherm to develop commercial ovens using high-steam levels, which would be exclusive to Hormel. The using high-steam levels, we would submit, is the reference to the process. You need to develop the oven in a way, the spiral oven, so that it is configured properly, so the bacon doesn't set fires, that it has the quality that is necessary in order for this to be a viable project. But what does that have to do with whether you say you use a microwave first before you use the oven? I thought that was one development of the process here that became a two-step process. How would that involve anything concerning the commercial oven? All the hybrid process was was putting a microwave oven before the spiral oven and then produce the bacon. It is a preheating that was contemplated by Mr. Howard when he developed the Unitherm process, and it doesn't change the product at all. But aren't you saying that the idea to do it that way was part of the, quote, project? It was not communicated to us that that's what Hormel wanted. What was communicated to us was just the spiral oven and the Unitherm process. When they cut off communication in the fall of 2008, they did not tell us anything from that point forward. The financial crisis was in play. We believed they gave up on the bacon project, and that is why they terminated. But the MCDA was still in place. They had obligations that they couldn't go out and reverse-engineer our test oven, and they did. And that's what this case is all about. Your Honors, I would like to reserve the remaining time. Thank you. Mr. O'Shea? You understand we want a response from you on the final order issue as well as the cross-claims? Yes, Your Honor. Within 10 days. May it please the Court, my name is Tim O'Shea. I represent the appellees, cross-appellants, Hormel Foods Corporation and Hormel Foods Corporate Services, LLC. Your Honors, I want to start where you were having some questioning about the JDA and the oven and whether a commercial oven was ever developed for the project. And the undisputed record shows that a commercial oven was not developed. In fact, if you look to the record, there were problems with the oven. Appendix 1765 identifies, by way of example, problems with that oven. Appendix 1774 addresses Hormel's recommendations on how those issues and problems with the oven could be fixed. I want to first focus... Were those communications to Unitherm? Yes, Your Honor. The parties were talking about how they can fix the oven as they embarked and continued on their joint development efforts. What was the date of that? I mean, was this after the... This was in, I believe, the references that I gave in the example, I believe, were in January of 2008, thereabouts. Your Honor, I want to focus on the JDA and the damages because that wasn't mentioned in the opening. The district court correctly found that Unitherm cannot establish the damages element for its breach of the JDA claim. At summary judgment, Unitherm asserted three specific breaches for the JDA. The first one was improper termination. The second one was failure to provide notice. And the third one was failure to share information. And the district court found that Unitherm could not establish damages for any of those three alleged breaches. On appeal, Unitherm has not made a single argument as to how the district court erred in its conclusion that Unitherm cannot establish damages as a matter of law with respect to those three breaches under the JDA. Under Eighth Circuit law, we believe that issue has been waived, and that alone is enough to affirm the district court's decision on Unitherm's breach of the JDA claim. With respect to the JDA and the district court's contract interpretation, we believe the district court got that right. The plain language of the JDA defined the word project to be a... I'm struggling with how there can be no damages if, in fact, there was a viable oven development in process. The undisputed record is that a commercial oven was never designed or developed. And you don't need the no damages argument. That's correct, Your Honor. But the fact that they did claim that they were damaged and the district court addressed those arguments... But my problem, what I'm struggling with, is if we disagree with the district court on the development issue, how can there possibly not be any damages that could be developed? Sure, Your Honor. Two answers to that. Number one, even if this court disagreed with the district court's interpretation of the project and interpreted the project to mean development of a commercial oven and a commercial process, again, the undisputed record shows that a commercial oven was never developed. And under the JDA, either party had the right to terminate the JDA if no commercially viable project had been achieved. Second, with respect to the damages, Unitherm did not come forward with any damages that they could establish either causally or non-speculative. And the district court held that those three breaches, even if the district court's interpretation was incorrect, they would not be able to establish damages as a matter of law. Well, usually you don't develop damages at summary judgment stage.  But this is kind of a joint venture contract arrangement. And if one side says we're out of here on the joint venture and the other side says we don't have the contract right to walk away, what damages do they have to present at the summary judgment stage? At the summary judgment stage, they have to at least establish how they have been damaged as a result of the alleged breaches that they have made. And the alleged breaches that they made is that Hormel improperly terminated. And the district court said, how have you been damaged? And they said, we've been damaged because we believe that the project should have went forward because we could have made a commercial oven at some point. The district court said, what is your damages based on? And the damages that Unitherm said for improper termination was based on was the exclusivity provision in the JDA. And as the district court correctly held, the exclusivity provision in the JDA was simply an agreement to negotiate in the future, a supplier agreement between Hormel and Unitherm. And the court correctly held that under Minnesota law, that's unenforceable as a matter of law. With respect to the failure to share information on the project, again, the district court asked, how have you been damaged by the fact that even if I assume you're correct, that the evidence shows Hormel didn't share information with you during the JDA, how have you been damaged? And Unitherm was not unable to point to any evidence of how they've been damaged, such that it was other than pure speculation. And then with respect to failure to provide 30 days notice, again, Unitherm was unable to establish how they've been damaged by that specific breach. Your Honor, I agree that the contract interpretation, we believe the district court got it right, that the project is about development of a commercial oven, and that never happened. And so it can be affirmed on that basis alone. The damages piece is just another layer that establishes that there was, this breach of contract claim needs to go. With respect to the MCDA, Your Honor, the district court correctly ruled that Unitherm's breach of the MCDA failed as a matter of law because there was no reverse engineering. The district court concluded that the Unitherm process and the Unitherm oven was in the public domain. And under the plain language of the MCDA, the restrictions and obligations of that agreement do not apply when information is or becomes part of the public domain. And the undisputed record shows that the Unitherm process and the Unitherm oven were both in the public domain. The Unitherm process was placed in a published patent application in July of 2009. The Unitherm oven was publicly marketed by Unitherm and advertised, and it was never marked confidential. And the district court correctly concluded that that information was in the public domain, and therefore the MCDA did not apply. With respect to moving back in that issue, what's your rational explanation of what paragraph 5B means? In the MCDA? If it doesn't mean what it appears to say, which is a retroactive effect. What does 5B mean? If it doesn't mean that your client had already disclosed truly confidential information, it would be in breach on the day it was signed. That's what it says to me. You and the district court say, oh, well, I can't mean that because a contract can't be breached before it's formed, to which I say, what if the contract says so, which is what it says to me. So I'm saying, what other explanation of paragraph 5B can there be? The explanation is twofold. Number one, the argument that Unitherm made as to a breach of paragraph 5B in the MCDA is that on July 11, 2007, Hormel asked JBT, another oven equipment manufacturer, to cook bacon in a spiral oven. As of July 11, 2007, the parties had not entered into the MCDA. But more importantly, that information was not confidential. There's no evidence in the record that that information was confidential. And, in fact, if we really wanted to know what was happening. I understand that, but that was not the lead argument. The lead argument is you can't breach a contract before it's formed. You just said, well, we didn't breach it because we just went out in the marketplace to see what others had available that Unitherm was trying to peddle. I understand that. But what does 5B mean? If they had truly disclosed confidential information as defined in the MCDA five days before it was signed, 5B says that's a breach, right? Or does it mean something? That's why I asked you. What else could it mean? I think 5B means something else. I haven't heard what yet. Well, I think 5B, what it's addressing is that when the parties sit down and if there was confidential information that was shared prior to the contract, then 5B would be applicable and the parties would have that understanding. The problem is, in this case, there's no evidence in the record that establishes that any confidential information was ever even shared before the MCDA was entered into. And under Minnesota law, an essential element to a contract is you have to have formation of a contract. On July 11, 2007, there was no contract. Hormel was under no obligation with Unitherm. And I think it's important to take a step back and let's find out what Unitherm's position was when this first case. I'm worried about contract law. Yes, you are. Your assertion, and I guess the district court agreed, that you can't breach a contract. Categorically, you can't breach a contract before it was formed. And I say parties, my notion of freedom of contract is parties can agree to anything they want to, including the foolish. And even under that scenario? And you're just in fancy language are saying, no, no, that's not true. Well, I think as the plain language of the contract makes clear, that in order to be able to breach that, it has to be confidential information. That's step one. And the problem that we have here is that there's no evidence in the record that confidential information was disclosed to Hormel and that Hormel improperly disclosed it or you misused it prior to July 20, 2007. And we have, if we take a step back. It's not the district court's reasoning, but I think that's a viable answer to the claim of breach. But I'm not sure we have a ruling to that effect. Your Honor, I believe the district court did address that specifically. It's Appendix 929. It's footnote 3 of Judge Erickson's order, where she's talking about the public knowledge exception to the MCDA does not apply. And she indicated that Unitherm relies on a letter discussing a July 11, 2007, disclosure of information from Hormel to JBT. And the district court concluded that Hormel and Unitherm had not entered into the confidentiality agreement on July 11, and thus the disclosure could not have been a breach of that agreement. Now, I want to provide some. I thought, though, the question was whether then the agreement that comes later retroactively brings that information into the disclosure or the nondisclosure obligation. Right. And so if that's true, then is your position that, yes, it brings those disclosures in, but it doesn't make it unlawful to have disclosed things before the agreement was signed? Is that your point? Your Honor, I think, yes, that's one aspect. But I think the other thing is to look at what do the facts show in the record. And what happened before July 11th is key to answering that question of what 5B means. I'm worried about whether you're asking us to affirm on an alternative ground, which is fact-laden. No, Your Honor. What you just read from that footnote does not satisfy me that the district court did anything other than rule that you can't breach a contract before it was formed. And that's one basis, and we submit that was correct. But there's another basis, Your Honor. But did the district court decide the other basis? Yes, we believe they did, and that's the point I'm trying to make. Okay, but that's a question of the district court's opinion. And you read it from a footnote which doesn't say that. Right, and now I'm going to provide context for that footnote, Your Honor. Appendix 3097. At the outset of this case, Hormel moved to dismiss Unitherm's breach of the MCDA claim because they made allegations that Hormel had breached the MCDA on July 11th, 2007, because of the very letter that the district court referenced in its summary judgment order. And when we moved to dismiss that MCDA claim, what Unitherm told the district court was a lot different than what they're telling us now here on the appeal. What Unitherm told the district court is in Appendix 3097, and I quote, the parties first met to discuss general details of the Unitherm process, end quote. And then it talks about, as of July 11, 2007, Hormel had only a general concept from Unitherm, use of a spiral oven with superheated steam, but no details of what Unitherm was claiming was the confidential trade secret of the Unitherm process. Appendix 3124. Unitherm also told the district court at the outset of this case, Unitherm's complaint in paragraphs 44 to 51 specifically makes the following assertions, none of which are based on the 2007 actions by Hormel. Nowhere does the complaint focus Unitherm's breach of contract claim upon the 2007 actions. Your Honor, the record doesn't support a breach prior to July 20th, 2007, and we also believe that the district court got it right when they said that you can't breach a contract before it is formed. So, Your Honor, the information that was disclosed can be subject to the agreement to answer your question specifically, but the obligation did not begin until the MCDA was signed. But either way, there's nothing in the record that would support a breach. Your Honor, I want to move on to Hormel's cross appeal with respect to the ownership issue. And the district court, we respectfully submit, erred when it ruled that Hormel does not point to any specific improvement in the process that was disclosed and developed as part of the JDA project. And this conclusion was error for three reasons. First, the district court interpreted the definition of inventions too narrowly. The JDA is not limited to a showing of improvements. Rather, the definition is much broader as it covers all discoveries, improvements, know-how, and ideas that were developed during the JDA and relate to the project. Second, the record evidence shows that Hormel did provide improvements to the cooking process disclosed in the Unitherm patent applications. Hormel disclosed a low temperature embodiment to Unitherm. The cooking bacon at a lower temperature of 350 degrees Fahrenheit and 75% humidity produced good product and eliminated grill flavor. That can be found in Appendix 1774 and Appendix 1765. Hormel also discussed the idea of optionally preheating with Unitherm during the JDA. That's in Appendix 1760. Hormel also disclosed to Unitherm that 100% superheated steam atmosphere improved the cooking process. That can be found in Appendix 2057. Third, the district court ignored Unitherm's own admissions that confirmed that the partly developed Unitherm process was further developed during the JDA and relates to the project. Before this litigation was filed, Mr. Howard told the patent office that one result of the party's joint development efforts was the cooking process disclosed in the patent applications. Unitherm owner David Howard testified at his deposition that the patent application for the cooking process disclosed in the Unitherm patent applications was filed in furtherance of the JDA. But now you're talking about the process. I thought the district court's concern was you were trying to have it both ways. You're trying to limit the project to the development of the oven when you're talking about Unitherm's claims. But now on your claim, you're trying to say relating to the project means relating to the process. What's wrong with that? Why should you be allowed to expand project? Or are you expanding project in your argument here? No, we're not expanding project, Your Honor. The project was specifically defined to be about the development of commercial ovens. The parties also sat down and negotiated terms for what would happen with ideas, improvements, know-how that come up when we're working with the development of the- I thought you were just arguing that you gave them good ideas about a cooking process. And why isn't relating to the project mean good ideas about an oven? It can mean good ideas about an oven as well, Your Honor. Well, not as well. Why isn't it limited to good ideas about an oven since it has to be relating to the development of ovens? We believe that the plain language of inventions is broader than just being about ovens. It was understanding that the parties are going to get together and they're going to exchange ideas that come up regarding the development of an oven. And one of those ideas was the process of cooking bacon in a superheated steam environment. So you say it relates to the project, relates to the development of ovens if it's about the process that- What we're saying is, I guess, is a little bit more narrow than that. The evidence in the record establishes that the ideas that were provided by Hormel to Unitherm during the joint development effort would constitute and meet the definition of inventions under the JDA. Why isn't all this an issue for the Patent Office? The issue of- What is HIP Unitherm doing with this information other than applying for a patent? On the cooking- And it sounds to me like what you're saying is they don't own what they've applied for. And why isn't that a Patent Office issue? It's not a Patent Office issue because we have a contract that is discussing ownership. And that- What's the practical implications if you're right? They don't get a patent, anything else? No, Your Honor. So Unitherm has already obtained a patent on that process. Where we're at under the JDA is it's about ownership. And that's what this appeal is about. You want a declaratory judgment that you effectively own the patent because you own the invention? The declaratory judgment that Hormel was seeking in this case is not seeking ownership of the partly developed Unitherm process that was disclosed in Mr. Howard's May 4, 2006, Bacon Memo. Rather, Hormel's declaratory judgment claim was seeking ownership of the cooking process that was developed during the JDA and that is now disclosed in the patent applications. The May 4, 2006, Bacon Memo that discloses the partly developed Unitherm process is different than what the cooking process has now disclosed in the patent application. And that is why, under the JDA, we believe that we have a claim to ownership. If you've got that declaratory judgment that you own the cooking process that's disclosed in the patent application, what happens to the patent? In terms of what happens to the patent, I believe it would just be, at this point, purely an ownership issue. The court would be deciding. So he's right. You own the patent is what this claim is about. Yes, that would be one result, Your Honor. Isn't there a jurisdictional question of who, under the patent laws, who should be deciding that, when? I believe, Your Honor, that ownership issues can be decided as a matter of state law as well, under contract law, and that's what we're asking for in our declaratory judgment claim. I see that my time is up. I'm happy to continue to answer questions. Thank you, Your Honors. Thank you, Your Honor. First, the appendix site that Judge Colleton was looking for is Appendix Volume 2, 1498, and I apologize for not having that earlier. I believe the answers to the questions that were posed by the court indicate how important the process was to the development of a commercial oven in this case. We submit that they can't be separated, and that it was air for the district court to limit everything to a commercial oven. We believe the summary judgment entered should be reversed on that basis. We also believe that our primary claim in this case relates to the obligations under the Mutual Confidential Disclosure Agreement after Hormel terminated this JDA. And we would point to Section 12 of the MCDA, which commits Hormel from not entering into any other contract or agreement pertaining to that would prevent compliance with the MCDA. There is an absolute obligation for Hormel that lasted five years after to not do what it did. When it went to JDA, a competitor, that was a breach of not only the reverse engineering obligation of the MCDA, it was a breach of the entire contractual relationship. And we would ask the court to reverse the entry of summary judgment. When your client has sold this prototype oven to Hormel, what does reverse engineering mean? They can't look at it? They can't take it apart? They can look at it and take it apart. What they can't do is convey the information to a competitor. They can't go to JBT at that stage and fill... That's different than reverse engineering, which is the term that keeps popping up in this case. JBT reversed engineered the test oven. That's who came in and changed their oven configurations and airflow and everything so they could make the product requested by Hormel. That's the critical breach. And we submit there's a fact issue surrounding that. How can it be wrong for them to reverse engineer something that the owner has said work on this? Because the test oven that was sold was sold at cost, lest the lease payments did not include the IP. And what is in this oven has intellectual property in it, where the fans are located, where everything is located. And we submit on that basis, Your Honor. Thank you. Thank you very much. And we'll be back to the court in 10 days. Thank you, counsel. The case has been thoroughly briefed and helpfully argued, and we'll take it under advisement.